IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DENA J. COWART,                       :
                                      :
     Plaintiff,                       :
                                      :
vs.                                   :
                                      :   CIVIL ACTION 13-0608-M
CAROLYN W. COLVIN,                    :
Social Security Commissioner,         :
                                      :
     Defendant.                       :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 10). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18). Oral argument was waived in this action (Doc. 17). Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-five years old, had completed a two-year college education (Tr. 37), and had previous work experience in retail merchandising and had worked as a cashier, shift supervisor, and stocking supervisor (Tr. 59-60). In claiming benefits, Plaintiff alleges disability due to basilar-type migraine headaches, syncopal episodes, degenerative joint disease of the knees, status post arthroscopy of the right knee, hypertension, diabetes mellitus, morbid obesity, asthma, and degenerative disc disease of the lumbar spine (Doc. 10, Fact Sheet).

The Plaintiff filed applications for disability benefits and SSI on August 19, 2010 and March 4, 2011, respectively (Tr. 129-30; *see also* Tr. 15). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she could not return to her past relevant work, Cowart

was capable of performing specified sedentary jobs (Tr. 15-28). Plaintiff requested review of the hearing decision (Tr. 11) by the Appeals Council, but it was denied (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Cowart alleges that: (1) The ALJ did not properly consider the conclusions of her treating physicians and (2) that there is no support for the ALJ's determination of Plaintiff's residual functional capacity (hereinafter *RFC*) (Doc. 10). Defendant has responded to—and denies—these claims (Doc. 13). The relevant evidence of record follows.

On July 14, 2009, Plaintiff was treated at the Mostellar Medical Center for an upper respiratory tract infection; she was diagnosed to have asthma, hypertension, and generalized anxiety (Tr. 267-68; *see generally* Tr. 255-75). On September 1, 2009, Cowart complained of bilateral knee pain after falling to her knees; range of motion (hereinafter *ROM*) was limited secondary to pain (Tr. 264). X-rays showed degenerative changes in both knees, though there was no evidence of fracture or subluxation; Mobic[1] and Ultram[2] were prescribed for pain (Tr. 264, 274).

---

[1] *Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis. *Physician's Desk Reference* 855-57 (62nd ed. 2008).
[2] **Error! Main Document Only.***Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain." *Physician's Desk Reference* 2218 (54th ed. 2000).

Three weeks later, Cowart called and requested an orthopaedic referral; Darvocet[3] and Phenergan[4] were prescribed (Tr. 263). Plaintiff reported, at her October 6, 2009 examination, that she had seen Orthopaedist Freeman and that her medications were making her nauseated; noting no changes from the previous examination, her doctor prescribed Tylox[5] (Tr. 262).

On September 29, 2009, Dr. Milton Wallace, Jr., Orthopaedic Surgeon, examined Plaintiff for bilateral knee pain; he noted a small effusion and medial joint line tenderness (Tr. 313; *see generally* Tr. 306-15). X-rays showed medial joint compartment osteoarthritis and some patellofemoral arthritis; injections were given in both knees. A month later, Cowart complained that the injections lasted only two-to-three weeks and that she was willing to undergo arthroscopy of the left knee (Tr. 313). On November 13, 2009, Dr. Wallace noted decreasing pain over time as well as significant chondromalacia (Tr. 313-14). On November 20, the notes indicate that Cowart had had arthroscopy on the left knee ten days earlier;[6] on exam, MCL tenderness was noted for which Tylox was given (Tr. 314). On December 11, the

---

[3]Propoxyphene napsylate, more commonly known as Darvocet, is a class four narcotic used "for the relief of mild to moderate pain" and commonly causes dizziness and sedation. *Physician's Desk Reference* 1443-44 (52nd ed. 1998).

[4]*Phenergan* is used as a light sedative. *Physician's Desk Reference* 3100-01 (52nd ed. 1998).

[5]Tylox, a class II narcotic, is used "for the relief of moderate to moderately severe pain". *Physician's Desk Reference* 2217 (54th ed. 2000).

[6]The Court found no other evidence of this surgery.

4

Orthopaedist noted little swelling, no redness, and no fluctuant (Tr. 314).

On December 28, 2009, Cowart returned to Providence Rehabilitative Services for treatment of pain caused by prolonged walking, rendering squatting and prolonged sitting and standing difficult, all initiated by a fall two months earlier (Tr. 200-02, 221-23). Cowart indicated that she was presently pain-free. On January 5, 2010, Plaintiff walked with an abnormal gait, though she used no assistive device; a treatment plan was prepared (Tr. 200-02). A week later, Cowart cancelled her treatment (Tr. 203). Over the next month, Plaintiff attended six sessions that taught her to improve her ROM and strength, so that she could perform work-related activities (Tr. 204; *see generally* Tr. 204-20); Cowart indicated that there were times she did not perform the exercises at home because of left knee pain (Tr. 206, 212, 214). A J-Brace was ordered for her assistance (Tr. 209). Plaintiff also received an injection (Tr. 214). Treatment sessions were discontinued because Cowart quit going (Tr. 220).

On February 1, 2010, Wallace noted that Plaintiff was very tender over the left knee for which he gave her an injection (Tr. 314). On the nineteenth, Cowart complained of severe pain for which the Doctor had no explanation (Tr. 314). On March 19, Wallace gave Plaintiff an injection in the left knee and

5

provided her a three-month disability parking pass (Tr. 314).
On April 26, the Orthopod noted that x-rays demonstrated
"complete obliteration of the medial joint space" in the right
knee that would ultimately require total knee arthroplasty;
Plaintiff received a Xylocaine shot (Tr. 312).

Mostellar Medical Center records demonstrate that although
she had received injections four days earlier, Plaintiff, on May
3, 2010, reported continuing right knee pain and the
ineffectiveness of her Ativan prescription; the doctor found her
to be in no acute distress (Tr. 259). Chest x-rays were normal;
the lungs were clear (Tr. 273).

On May 19, Orthopod Ben Freeman, partner to Dr. Wallace,
noted tenderness and gave Plaintiff an injection (Tr. 309). On
July 20, Wallace performed the arthroscopy of the right knee
(Tr. 311). On August 16, 2010, Cowart still had some
discomfort, but was doing better; Wallace prescribed Relafen[7]
(Tr. 308). On the twenty-fifth, Plaintiff complained of
swelling, but Dr. Freeman saw none, noting good ROM (Tr. 307).
On October 5, Cowart complained of bilateral knee pain,
following a fall; Orthopod Wallace noted some tenderness and
gave her an injection (Tr. 306).

On December 17, Dr. James Devaney saw Plaintiff for a sinus

---

[7]*Relafen* "is indicated for acute and chronic treatment of signs and symptoms of osteoarthritis and rheumatoid arthritis." *Physician's Desk Reference* 2859 (52nd ed. 1998).

6

infection, a urinary tract infection, and bad nerves; she was tested for and diagnosed to have Diabetes Mellitus and was treated for that and hypertension (Tr. 407-08). On January 26, 2011, Cowart had a vasogaval syncopal[8] episode (Tr. 401-02).

On February 15, 2011, Cowart went to Infirmary West Hospital with complaints of chest pain; x-rays were normal (Tr. 367; *see generally* Tr. 351-69). Ultram was prescribed for costochondritis[9] (Tr. 356).

On March 29, 2011, following another fall, Plaintiff complained of tenderness in her left hand; Dr. Freeman gave her an injection, limited her to light work, and prescribed Ultram (Tr. 315).

On April 11, Dr. Devaney saw Plaintiff for blood pressure and sugar problems as well as several fainting spells; the Doctor gave her a right knee injection because of tenderness (Tr. 399-400). Two weeks later, Dr. Devaney noted a vasovagal syncope episode initiated by bilateral knee pain (Tr. 397-98). The Doctor completed a pain form, stating that Cowart's pain was distracting her from adequately performing daily activities; medication side effects would limit her effectiveness in those

---

[8]"Vasovagal syncope occurs when your body overreacts to certain triggers, such as the sight of blood or extreme emotional distress." *See* http://www.mayoclinic.org/diseases-conditions/vasovagal-syncope/basics/definition/con-20026900

[9]"Costochondritis is an inflammation of the cartilage that connects a rib to the breastbone[; resulting pain] may mimic that of a heart attack." *See* http://www.mayoclinic.org/diseases-conditions/costochondritis/basics/definition/con-20024454

7

activities (Tr. 411). Two days later, Devaney stated that Plaintiff could not serve jury duty because of "unexplained syncopes" (Tr. 410).

On May 5, 2011, Cowart went to Infirmary West after a syncopal episode and was held for twenty-four hour observation; an EEG, CT of the brain, and EKG were normal (Tr. 339-44; *see generally* Tr. 316-50). The diagnosis was hypoglycemia; it was recommended that Cowart's diabetic regimen be reassessed (Tr. 324). Dr. Devaney examined her on May 13 (Tr. 395).

On May 18, 2011, Dr. Wallace completed a pain form indicating that Cowart's pain frequently distracted her from adequately performing everyday activities; he thought, though, that the side effects from her medications would not create serious problems (Tr. 434).

On June 1, records from Cardiology Associates and Providence Hospital demonstrate that, following a syncopal episode, Cowart had normal systolic function, normal pulmonary artery pressure, and a normal EKG (Tr. 412-14, 435-52). A CT of the head showed no abnormalities.

On June 9, Orthopod Wallace examined Plaintiff for complaints of bilateral knee pain (Tr. 474). He noted some effusion in the left knee, but no redness or warmth; the Doctor

prescribed Celebrex.[10]

On June 10, Dr. Devaney examined Cowart for her recent syncopal episodes (Tr. 461-62; *see generally* Tr. 453-73). Two weeks later, Plaintiff complained of a headache for the previous week (Tr. 459-60). On July 13, Cowart again complained of a headache; the Doctor told her not to drive (Tr. 457-58). X-rays of the sinuses the next day demonstrated no abnormality (Tr. 466). On August 11, 2011, Devaney examined Cowart for a fainting spell, a headache, and blood pressure issues; he prescribed Tylenol with codeine[11] (Tr. 453-54).

On August 26, 2011, Plaintiff was seen at Cardiology Associates, following a thirty-day monitoring for a cardiac event; there was no arrhythmia, though there was some sinus rhythm/sinus tachycardia (Tr. 415-27). Two days later, Providence Hospital records demonstrate that Cowart complained of chest pain and a near-syncopal episode following a poorly-performed, but negative, stress test; she was hypertensive (Tr. 240, 253; *see generally* Tr. 224-54). An EKG revealed no ischemia; computer tomography showed no pulmonary embolism, but confirmed chronic sinusitis. Catheterization of the left side

---

[10]*Celebrex* is used to relieve the signs and symptoms of osteoarthritis, rheumatoid arthritis in adults, and for the management of acute pain in adults. *Physician's Desk Reference* 2585-89 (58th ed. 2004).

[11]*Tylenol* with codeine is used "for the relief of mild to moderately severe pain." *Physician's Desk Reference* 2061-62 (52nd ed. 1998).

9

of her heart was normal though there was 20% right coronary artery stenosis. Plaintiff's chest pain was thought to be bronchitis; she was told to lose weight and was discharged the next day in stable condition. A skull series on August 31 was normal (Tr. 465).

On September 7, 2011, Dr. Devaney examined Cowart for various complaints, including a right foot sprain, a fever, and high blood pressure (Tr. 455-56). On November 8, Plaintiff complained of tachycardia and fainting; Xanax[12] was prescribed for anxiety and depression (Tr. 518-19). Three days later, Dr. Devaney wrote a "To Whom it May Concern" letter stating that Coward should not be driving because of "episodes of syncope and black out spells" (Tr. 475).

Plaintiff was admitted to Infirmary West Hospital on December 12 for four nights for repeated syncopal episodes and a cluster migraine headache (Tr. 477-513). A CT showed no acute brain abnormality (Tr. 495); Ultram, codeine, and Fiorinal[13] were prescribed (Tr. 483, 495).

On December 16, Dr. Devaney examined Cowart for a headache (Tr. 516-17). On that same date, he completed a clinical assessment of pain indicating that Plaintiff had pain, but that

---

[12]*Xanax* is a class four narcotic used for the management of anxiety disorders. *Physician's Desk Reference* 2294 (52nd ed. 1998).

[13]*Fiorinal* is used for relieving tension (or muscle contraction) headaches. *Physician's Desk Reference* 1855-57 (52nd ed. 1998).

it would not frequently prevent functioning in daily activities
(Tr. 476). The Doctor indicated that the side effects from her
medications would limit her effectiveness. Devaney further
stated that because of her uncontrolled syncope, Cowart was
unable to drive or work (Tr. 476). In examination notes of
January 13, 2012, Plaintiff complained of a non-stop headache
that was causing memory loss; the Doctor noted that the syncope
had improved (Tr. 514-15). On February 14, Devaney saw
Plaintiff for a three-day headache, two fainting spells, and
blood sugar and pressure problems (Tr. 539, 541).

On March 8, 2012, Plaintiff was admitted to Mobile
Infirmary Medical Center for six nights, following a syncopal
episode at her social security hearing, secondary to a basilar-
type migraine headache (Tr. 529; *see generally* Tr. 520-34).[14] A
lumbar puncture was uncomplicated. An MRI of the lumbar showed
degenerative joint changes with disk bulge as well as mild
lumbar facet arthropathy and ectasia of the abdominal aorta; a
brain MRI showed an eight millimeter pituitary microadenoma. An
EKG was unremarkable. Plaintiff was discharged home in stable
condition with prescriptions for Topomax,[15] Klonopin,[16]

---

[14]The Court notes that the ALJ discussed this event and noted the diagnosis in her opinion (Tr. 25), rendering Cowart's assertion otherwise wrong (Doc. 10, p. 11).

[15]*Topomax* is used in the treatment of migraine headaches. **Error! Main Document Only.***Physician's Desk Reference* 2378-79 (62nd ed. 2008).

11

Percocet,[17] and Paxil.[18]  On March 28, Dr. Devaney examined Cowart for a severe headache and eye problems (Tr. 538, 540).

On May 4, 2012, Cowart went to Mobile Infirmary for a headache, diminished vision, nausea, and light sensitivity; she was discharged with prescriptions for Ativan[19] and Zofran (Tr. 547-54).  On May 9, Dr. Delaney saw Plaintiff as a follow-up to her hospitalization and indicated that her chest pain and headaches were related (Tr. 536-37).  This concludes the relevant evidence of record.

In bringing this action, Plaintiff asserts that the ALJ did not properly consider the conclusions of her treating physicians.  Cowart specifically references Drs. Devaney and Wallace (Doc. 10, pp. 11-16).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*,

---

[16]*Klonopin* is a class four narcotic used for the treatment of panic disorder.  **Error! Main Document Only.***Physician's Desk Reference* 2732-33 (62nd ed. 2008).

[17]*Percocet* is used for the relief of moderate to moderately severe pain.  **Error! Main Document Only.***Physician's Desk Reference* 1125-28 (62nd ed. 2008).

[18]**Error! Main Document Only.***Paxil* is used to treat depression.  *Physician's Desk Reference* 2851-56 (52nd ed. 1998).

[19]**Error! Main Document Only.**"*Ativan* (lorazepam) is indicated for the management of anxiety disorders or for the short-term relief of the symptoms of anxiety or anxiety associated with depressive symptoms." Its use is not recommended "in patients with a primary depressive disorder or psychosis."  *Physician's Desk Reference* 2516-17 (48th ed. 1994).

660 F.2d 1078, 1084 (5th Cir. 1981);[20] *see also* 20 C.F.R. § 404.1527 (2013).

The Court notes that Cowart, in bringing this claim, asserts that "the ALJ's 'explanation' for her RFC assessment consists of rejecting portions, or all, of the opinions of Ms. Cowart's treating physicians, Dr. Devaney and Dr. Wallace" (Doc. 10, p. 16). The Court finds no basis for this assertion with regards to the opinions and conclusions put forth by Orthopod Wallace. The ALJ faithfully summarized Wallace's medical records and noted that his medical regimen was apparently successful because no further treatment was given beyond June 2011, a year prior to when the ALJ's decision was rendered (Tr. 23). The Court would further note that the medical evidence reveals no more complaints of knee pain, the condition for which Plaintiff was being treated by Wallace, by Plaintiff to any doctor beyond Wallace's final examination.

As for Dr. Devaney, the ALJ does reject some of his conclusions, but not all of them (Tr. 26). Specifically, the ALJ noted the Doctor's driving restriction, gave it great weight, and adopted it as part of the RFC (Tr. 26). The ALJ, however, rejected Devaney's conclusion that Cowart was disabled

---

[20]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

13

and unable to work, finding that the medical and testimonial evidence did not support that opinion (Tr. 26). The ALJ also noted that the RFC determination is, ultimately, the ALJ's decision (Tr. 26).

The Court notes that Devaney is the only medical source of record asserting Cowart's disability. Dr. Wallace, Plaintiff's Orthopaedic Surgeon, indicated that her pain would distract her from adequately performing daily activities (Tr. 434), but this was a year before the ALJ's decision and just before she quit seeking Wallace's treatment for what now appears to be a resolved knee problem. Devaney points to no objective medical evidence to support his conclusion that Plaintiff is unable to work; the Court further notes that the Doctor indicated in his treatment notes, just a month after declaring her disabled, that her syncope was improved (Tr. 514-15). The Court further notes that the ALJ discredited Cowart's testimony about her abilities and limitations (Tr. 20, 23, 26), a finding not challenged in this action.

While Plaintiff has multiple medical problems and has suffered syncopal episodes, including one before the ALJ, the evidence does not demonstrate a total inability to work. Cowart's arguments otherwise does not change that finding; Devaney's declaration of disability does not mean that she is disabled. This claim is without merit.

14

Plaintiff has also asserted there is no support for the ALJ's determination of Plaintiff's RFC (Doc. 10). The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2013). The ALJ's RFC assessment is as follows:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant can lift and carry 20 pounds occasionally, and up to 10 pounds frequently; can stand or walk for two hours in an eight hour workday but only for 15 minutes at a time; can sit for six hours in an eight hour workday; no more than frequent use of the left upper extremity for handling, fingering, feeling, pushing, and pulling; no requirement for operation of foot pedal controls or pushing and pulling with the bilateral lower extremities; occasionally can climb rams [sic] or stairs; should never crawl; requires the use of a cane in the dominant right upper extremity; should avoid temperature extremes, humidity and wetness, vibration, fumes, odors, dust, gases, and poor ventilation, and hazards; and the claimant should not commercially drive or be exposed to open water.

(Tr. 22).

Cowart, in bringing this claim, asserts that the ALJ found her capable of performing light work while also concluding that she could perform sedentary work (Doc. 10, p. 5; *cf.* Tr. 22, 26). While the Court acknowledges the inconsistency, the Court finds this to be a scrivener's error and, ultimately, harmless.

Cowart also insinuates that the ALJ's decision is to be

15

reversed because of her reliance on a single decision maker (Doc. 10, pp. 16-17; *see* Tr. 294-301).  Plaintiff correctly notes that a single decision maker is not an acceptable medical source under the regulations.  *See* 20 C.F.R. §§ 404.1513, 416.913.  Nevertheless, the ALJ never even cites the evidence to which Cowart points, so it is difficult to see how the Court can find error as there is no evidence that the ALJ relied on it.

Plaintiff has also argued that although her syncopal episodes were a severe impairment, they were not included in the RFC or the hypothetical to the Vocational Expert (hereinafter *VE*) (Doc. 10, pp. 12-13).  The Court notes that the RFC and the ALJ's first hypothetical question to the VE are near-mirror images (Tr. 22; *cf.* Tr. 60-61).  The Court further notes that the ALJ correctly noted that the objective medical evidence provided no explanation for the syncopal episodes (Tr. 25). Furthermore, as noted by the ALJ, this impairment was taken into consideration with the ALJ's limiting Cowart from work environments with hazards and prohibiting her from driving (Tr. 25).  The Court finds no merit in this argument.

Finally, Plaintiff makes the bald assertion that the ALJ did not meet her burden of showing that she could perform work in the national economy (Doc. 10, p. 22).  The Court notes that the last page of the ALJ's decision reveals that the ALJ took testimony from a VE who indicated that Cowart was capable of

performing the jobs of (1) packaging and/or sorting; (2) weighing, measuring, or checking; and (3) clerical work (Tr. 27; *cf.* Tr. 60-62). Plaintiff's claim lacks serious consideration, much less merit.

Cowart has raised two claims in bringing this action; both are utterly without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 24th day of July, 2014.

					s/BERT W. MILLING, JR.
					UNITED STATES MAGISTRATE JUDGE